**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MARISOL TOPETE and ROSALBA MALDONADO, | Case No. 1:16-cv-00271-DAD-EPG |
| Plaintiffs, | **FINDINGS AND RECOMMENDATIONS THAT PLAINTIFFS' MOTION FOR ENTRY OF DEFAULT JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 55(b) AND TO DISMISS CLASS CLAIMS UNDER FEDERAL RULE OF CIVIL PROCEDURE 23(e) BE GRANTED** |
| v. | |
| RAMOS FURNITURE; FURNITURE DEALS, INC.; DIMAS MANUEL, INC.; and DOES 1-100, inclusive, | |
| Defendants. | (ECF Nos. 141, 142) |
| | **FOURTEEN (14) DAY DEADLINE** |

In this putative class action alleging violations of the Fair Labor Standards Act, California Labor Code, California Industrial Welfare Commission ("IWC") Wage Orders, and California Business and Professions Code, Marisol Topete and Rosalba Maldonado ("Plaintiffs") now move for dismissal of their class claims and entry of default judgment on their individual claims against Furniture Deals, Inc. dba Ramos Furniture ("FDI") and Dimas Manuel, Inc. ("Dimas") (collectively, "Defendants"). (ECF Nos. 141,142.) Defendants have not filed any opposition to the motion.

For the reasons set forth below, the Court recommends dismissing the class claims and entering judgment as described herein.

**I.     BACKGROUND**

Plaintiffs commenced this class action on February 25, 2015, naming Ramos Furniture as

1

defendant. (ECF No. 1.) On August 10, 2016, Plaintiffs filed a First Amended Complaint, joining Dimas Manuel, Inc. and Furniture Deals, Inc.[1] as party defendants and setting forth the following causes of action: (1) failure to provide meal periods in violation of California Labor Code § 512 and § 11 of the applicable IWC Wage Order; (2) failure to provide rest periods in violation of § 12 of the applicable IWC Wage Order; (3) failure to provide overtime wages in violation of California Labor Code § 510; (4) failure to provide accurate wage statements in violation of California Labor Code § 226; (5) unlawful business practices in violation of California Business and Professions Code § 17200 *et seq.*; and (6) failure to pay overtime in violation of the Fair Labor Standards Act. (ECF No. 79.)

Plaintiffs allege that FDI and Dimas operate furniture stores throughout California, and is engaged in commerce or the production of goods for commence. *Id.* at 3. Each corporation has a gross volume of sales that has exceeded $500,000. *Id.* The corporations are interrelated and integrated in their activities, labor relations, ownership, and management, and there is continuity between the operations and workforce of each corporation. *Id.*

Plaintiff Rosalba Maldonado was employed as a furniture store employee by Dimas Manual, Inc. from approximately May 2011 through April 2012. *Id.* Plaintiff Marisol Topete was employed as a furniture store employee by Furniture Deals, Inc. from approximately November 2013 through January 2015. *Id.* at 2. Defendants required Plaintiffs to work for more than eight (8) hours per day and more than forty (40) hours per week without providing the opportunity to take a thirty (30) minute off-duty meal break or a ten (10) minute rest break. *Id.* at 5. Plaintiffs did not waive their right to a 30-minute meal period by mutual consent. *Id.* at 11. Defendants paid Plaintiffs a straight hourly rate for all hours worked. *Id.* at 5. Defendants did not pay Plaintiffs one and one-half (1-1/2) times their regular rate of pay for any overtime hours worked over eight hours per day and/or forty hours per week. *Id.* Additionally, Defendants did not issue paycheck stubs. *Id.* Instead, Defendants paid Plaintiffs under the table in cash without payment of overtime wages, standard deductions, or contributing to the employers' share of payroll taxes. *Id.* Plaintiffs

---

[1] Ramos Furniture filed an answer to the original complaint in which it identified itself as "Furniture Deals, Inc. dba Ramos Furniture." (ECF No. 6.) The Court will refer to Ramos Furniture and Furniture Deals Inc. as one entity, Furniture Deals, Inc. dba Ramos Furniture, as it appears the defendants are in fact one and the same.

were involuntarily discharged, constructively terminated, or voluntarily terminated their employment, and did not receive all pay due and owing at the time their employment was terminated. *Id*. at 6.

On August 29, 2016, FDI filed an answer. (ECF No. 84.) On June 6, 2017, Plaintiffs requested, (ECF No. 115), and on June 20, 2017, the Clerk of the Court entered default as to Dimas, (ECF No. 116).

On August 4, 2016, the parties appeared for a scheduling conference before this Court. (ECF No. 78.) On August 16, 2016, the Court issued a scheduling order providing that all discovery regarding class certification and the defendant entities be completed no later than February 28, 2017, and all non-expert discovery be completed no later than October 27, 2017. (ECF No. 82.)

On November 29, 2016, the parties requested a Telephonic Informal Discovery Dispute Conference. (ECF No. 86.) The parties appeared for the conference on December 1, 2016, and the Court granted Plaintiffs permission to file a motion to compel. (ECF No. 87.) On December 5, 2016, the parties filed a stipulation resolving the discovery dispute and extending the non-expert discovery, which the Court endorsed. (ECF Nos. 88, 89.)

On April 21, 2017, Plaintiffs filed a motion to compel further discovery responses, specifically the names and telephone numbers of putative class members. (ECF No. 102.) On May 4, 2017, the parties filed a stipulation to modify and extend, among other things, the non-expert discovery deadline to March 16, 2018. (ECF No. 104.) The Stipulation stated that Isidro Ramos, a representative of FDI, "is no longer willing and/or able to participate in litigation" because he has "experienced a relapse of a prior medical condition and is battling personal challenges that prevent him from being able to effectively attend mediation and is unable to respond to Plaintiff's discovery requests at this time." *Id.* At a hearing on May 19, 2017, the Court granted the motion to compel and granted Plaintiffs leave to move for sanctions. (ECF No. 107.) The Court also vacated the non-expert discovery deadline. *Id.* On June 6, 2017, the Court issued an order, directing FDI to respond to Plaintiff's interrogatories and requests for production within 30 days. (ECF No. 114.)

On or about June 27, 2017, the parties again requested a discovery dispute conference. (ECF No. 117.) On July 6, 2017, an Informal Discovery Dispute Conference was held at which the Court granted Plaintiffs leave to file a motion to compel and a motion for sanctions. (ECF No. 120). The Court warned FDI that failure to participate in discovery and/or non-compliance with the Court's orders will result in sanctions, which may include terminating sanctions. *Id.*

On June 29, 2017, counsel for FDI, Paul J. Bauer, Esq., filed a motion to withdraw as counsel. (ECF No. 118.) The Court held a hearing on the motion to withdraw on July 26, 2017. (ECF No. 125.) A representative for FDI, Isidro Ramos, was present at the hearing. *Id.* The Court noted that Mr. Bauer had been put in an intractable position in defending the case by having to propound untenable legal arguments. *Id.* In addition, FDI agreed to provide discovery, but later reneged and refused to participate in the discovery process. *Id.* FDI said it could not compensate counsel and could not afford to continue its business practices. *Id.* And, FDI informed Mr. Bauer that it "no longer intends to defend itself and [] asked [counsel] not to perform any other work." (ECF No. 118-1 at 5.) On this basis, the Court relieved Mr. Bauer as counsel of record for FDI. (ECF No. 126.)

The Court, however, explained to Mr. Ramos that because FDI is a corporation, it cannot appear in an action without an attorney. (ECF No. 125.) In its order relieving Mr. Bauer as counsel, the Court also stated, "Defendants Ramos Furniture and Furniture Deals, Inc. shall ***not*** be permitted to proceed without an attorney in this action. If Defendants do not secure alternate counsel, they will be subject to default judgment." (ECF No. 26).

On July 24, 2017, Plaintiffs filed a Motion to Compel Discovery Responses, arguing that FDI had failed to respond to Requests for Admission and Interrogatories under Fed. R. Civ. P. 33 and 36. (ECF No. 123.) On September 5, 2017, the Court granted Plaintiffs' motion, and directed FDI to serve written responses to Plaintiffs' Interrogatories within 10 days. (ECF No. 130.) The Court also granted Plaintiffs leave to move for any sanctions, including a default judgment and attorney's fees, without further order of the Court. *Id.* On October 13, 2017, Plaintiffs moved for the entry of default against FDI, (ECF No. 131), which the Court granted, (ECF No. 134).

Now before the Court is Plaintiffs' motion to dismiss their class action claims pursuant to

4

Rule 23(e) and for entry of default judgment on their individual claims pursuant to Rule 55(b). (ECF No. 141.)

## II.    DISCUSSION

### A.  Dismissal of the Putative Class Claims

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "The court's duty to inquire into a settlement or dismissal differs before and after certification. Before certification, the dismissal is not *res judicata* against the absent class members and the court does not need to perform the kind of substantive oversight required when reviewing a settlement binding upon the class." *Diaz v. Tr. Territory of P. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989) (internal citation omitted). Rule 23(e) was specifically amended in 2003 to make clear that court approval was not required for "settlements with putative class representatives that resolved only individual claims." Fed. R. Civ. P. 23 advisory committee's note to 2003 amendment. Nevertheless, the Ninth Circuit has held that in deciding whether the putative class should receive notice of voluntary dismissal of putative class claims, courts:

> should inquire into possible prejudice from (1) class members' possible reliance on the filing of the action if they are likely to know of it either because of publicity or other circumstances, (2) lack of adequate time for class members to file other actions, because of a rapidly approaching statute of limitations, (3) any settlement or concession of class interests made by the class representative or counsel in order to further their own interests.

*Diaz*, 876 F.2d at 1408. While there remains some uncertainty about whether the *Diaz* holding applies in the wake of the 2003 amendments to Rule 23(e), the standard articulated in *Diaz* "strikes the right balance between the full-bore fairness review for settlement of certified class claims, and doing nothing at all to ensure that putative class members are protected from collusive deals." *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016).

In the present action, there is no prejudice to absent class members. First, there is no indication that this action has been publicized or that any potential class member has relied on the

filing of this action. Second, the statute of limitations has been tolled since the suit was filed, *see American Pine and Construction v. Utah*, 414 U.S. 538(1974), and the class was to encompass past, present, and future employees of Defendants. (ECF No. 79 at 6). Third, there has been no concession of class interests made by the class representative or counsel to further their own interests.  Plaintiffs seek only to resolve their individual claims. (ECF No.141-1 at 11.) Moreover, pursuing the class claims is impracticable. After more than three years of litigation with multiple conferences and extensions, Plaintiffs have yet to obtain even basic discovery. While Plaintiffs diligently pursued this action and satisfied their obligations as representative, Defendants failed to meaningfully participate in the legal process, leaving Plaintiffs to seek entry of default. Thus, there is no potential for prejudice that would require providing notice and an opportunity to intervene to the absent class members. Accordingly, the motion for dismissal of the class claims pursuant to Rule 23(e) without prejudice is granted.

### B. Default Judgment on Individual Claims

#### i. Legal Standard

Federal Rule of Civil Procedure 55(a) provides that default shall be entered "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Upon entry of default, the factual allegations of the complaint, except those relating to the amount of damages, are taken as true. *TeleVideo Sys, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987); *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of facts, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established."). However, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir.1978)).

Federal Rule of Civil Procedure 55(b) permits a court-ordered default judgment following the entry of default under Rule 55(a). "A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172,

1174 (C.D. Cal. 2002) (citing *Draper v. Coombs*, 792 F.2d 915, 924–25 (9th Cir.1986)). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, courts consider the following factors:

"(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-1472 (9th Cir. 1986).

After determining that a party is entitled to entry of default judgment, the court must determine the terms of the judgment to be entered. However, the scope of relief available on "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

### ii. *Analysis of Eitel Factors*

#### 1. *The Possibility of Prejudice to Plaintiff*

"The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment." *Joe Hand Promotions, Inc. v. Dhillon*, No. 2:15–cv–1108–MCE–KJN, 2015 WL 7572076, at *2 (E.D. Cal. Nov. 25, 2015).

Here, Plaintiffs would suffer prejudice if the Court declines to enter a default judgment. Defendant Dimas has not appeared in this action. And, while Defendant FDI has appeared, it has failed to meaningfully participate in this action. Counsel for FDI withdrew from representation because of the Defendant's failure to participate in this legal proceeding. Specifically, Isidro Ramos, a representative of FDI, stated that he was "no longer willing and/or able to participate in litigation" because he has "experienced a relapse of a prior medical condition and is battling personal challenges that prevent him from being able to effectively attend mediation and . . . respond to Plaintiff's discovery requests at this time." (ECF No. 104.) FDI also informed its counsel that it "no longer intends to defend itself." (ECF No. 118-1 at 5). FDI made an intentional

choice not to participate in this action, prompting the Court to thrice compel disclosure, (ECF Nos. 107, 114, 130), and to grant leave to file a motion for any sanctions, including a default judgment and attorney's fees, (ECF. No 130.) Defendants' failure to participate in this litigation has prejudiced Plaintiffs by leaving them with no recourse to recover for any harm caused by Defendants' employment practices. Thus, the first *Eitel* factor weighs in favor of the entry of default judgment. *See, e.g.*, *Otter Prods. LLC v. Ace Colors Fashion, Inc.*, No. 2:14–cv–00141–ODW(PJWx), 2014 WL 4187947, at *3 (C.D. Cal. Aug. 21, 2014) (stating that "[a] plaintiff suffers prejudice" under the first *Eitel* factor "if there is no recourse for recovery absent default") (citing *Phillip Morris, USA, Inc. v. Catsworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003)).

### 2. The Merits of the Claims and the Sufficiency of the Complaint

Plaintiff moves for a default judgment on five causes of action: (1) failure to provide meal periods, (2) failure to provide rest periods, (3) failure to pay overtime wages, (4) failure to provide wage statements, and (5) failure to pay waiting time penalties. "The second and third *Eitel* factors address the merits and sufficiency of [the] claims pled in the complaint." *Lyon v. Bergstrom Law, Ltd.*, No. 116CV00401DADSKO, 2017 WL 2350447, at *3 (E.D. Cal. May 31, 2017) (quoting *HICA Educ. Loan Corp. v. Warne*, No. 11–CV–04287–LHK, 2012 WL 1156402, at *2 (N.D. Cal. Apr. 6, 2012)); *see generally U.S. ex rel. Hajoca Corp. v. Aeroplate Corp.*, No. 1:12–cv–1287–AWI–BAM, 2013 WL 3729692, at *3 (E.D. Cal. July 12, 2013) (addressing the second and third *Eitel* factors "together because of the relatedness of the two inquiries"). To weigh these factors, courts evaluate whether the complaint is sufficient to state a claim that supports the relief sought. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see also DirecTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.") (internal quotation marks omitted).

### a. Meal Periods

The allegations pled in the operative complaint sufficiently state a claim of a failure to provide off-duty meal periods. California requires non-exempt employees who work more than

five hours in a day be afforded a meal period of "not less than 30 minutes." *See* Cal. Lab. Code §§ 226.7, 512 (West 2000). The meal period may be waived by mutual consent of the employer and the employee when a work period of not more than six hours will complete the workday. *Id.* The applicable regulation governing meal periods in the mercantile industry, Wage Order 7-2001 (the "Wage Order"), requires employees be relieved of "all duty" during the meal period. Cal. Code Regs. tit. 8, § 11070, subd. 11(C). It provides, in relevant part:

> Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

*Id.* "[E]mployers fulfill their obligation to provide meal periods to their employees when they relieve their 'employees of all duty, relinquish[ ] control over their activities and permit[ ] them a reasonable opportunity to take an uninterrupted 30-minute break, and do[ ] not impede or discourage them from doing so.'" *Rodriguez v. Taco Bell Corp.*, 16-15465, 2018 WL 3446948, at *4 (9th Cir. July 18, 2018) (quoting *Brinker Restaurant Corp. v. Superior Court*, 273 P.3d 513, 536-537 (Cal. 2012)). "The remedy for failure to provide a meal or rest break required by statute or regulation is premium wages: 'one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided.'" *Id.* (quoting Cal. Labor Code § 226.7(c)).

Here, Plaintiffs allege that it was Defendants' "systematic business policy and practice to work Plaintiffs [] more than five hours per day without the provision of an off-duty 30-minute meal period." (ECF No. 79 at 11.) Plaintiffs did not waive their right to a 30-minute meal period by mutual consent, and did not receive premium wages. *Id.* These allegations are sufficient to state a claim for violation of the meal period requirement under California law.

\\\
\\\
\\\

9

## b.  *Rest Period*[2]

The allegations pled in the operative complaint sufficiently state a claim of a failure to provide rest periods. California requires non-exempt employees be afforded one paid 10-minute rest period per four hours of work, or a major fraction thereof. *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1104 (2007) (citing Cal. Code Regs. tit. 8, § 11070). The applicable regulation for the mercantile industry provides, in relevant part:

> (A) Every employer shall authorize and permit all employees to take rest periods, which in so far as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate often (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 ½) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction for wages.

Cal. Code Regs. tit. 8, § 11070, subd. 12 (a). The California Supreme Court has defined the phrase "major fraction thereof" to mean more than half. *Brinker Rest. Corp.*, 273 P.3d at 529. Employers who violate these requirements must pay premium wages. *Id.* at subd. 12(b).

Here, Plaintiffs allege that they were not provided ten-minute rest periods after working more than three and a half hours per day, and were not paid premium wages. (ECF No. 79 at 12-13.) These allegations are sufficient to state a claim for the violation of the Wage Order.

## c.  *Overtime Wages*

The allegations pled in the operative complaint sufficiently state a claim of a failure to pay overtime wages. California Labor Code § 510 and § 3 of the Wage Order governs payment of overtime wages. Specifically, Labor Code § 510 provides, in pertinent part:

> Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of

---

[2] In the operative complaint, Plaintiffs cite to California Labor Code § 512; however, this statute is silent as to any rest period requirement. Plaintiffs also cite to Industrial Welfare Commission Wage Order No. 9-2001, which pertains to the Transportation Industry. It appears this was done in error as Plaintiffs were furniture store employees. Accordingly, the Court will analyze the claims under the applicable Wage Order, Wage Order No. 7, which pertains to employees in "any industry, business, or establishment operated for the purpose of purchasing, selling, or distributing goods or commodities at wholesale or retail; or for the purpose of renting goods or commodities." Cal. Code Regs. tit. 8, § 11070.

> pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee. Nothing in this section requires an employer to combine more than one rate of overtime compensation in order to calculate the amount to be paid to an employee for any hour of overtime work.

Cal. Labor Code § 510(a).

Plaintiffs allege that during all relevant periods, they worked more than eight hours per day and forty hours per week, as well as more than twelve hours per day without payment of overtime wages. These allegations are sufficient to state a claim for the violation of § 510 of the Labor Code and § 3 of the Wage Order.

### d. *Wage Statements*

The allegations pled in the operative complaint sufficiently state a claim of a failure to provide accurate wage statements. Section 226(a) of the California Labor Code requires employers to provide employees with accurate itemized statements. Section 226(e) allows employees "suffering injury as a result of a knowing and intentional failure by an employer" to abide by Section 226(a) to recover the greater of all actual damages, or $50 for an initial violation and $100 per employee for each violation in a subsequent pay period, not to exceed $4,000 total. Cal. Lab. Code § 226(e)(1).[3] Further, if an employer fails to provide a wage statement altogether, "[a]n employee is deemed to suffer injury[.]" Cal. Lab. Code § 226(e)(2)(A).

Here, Plaintiffs allege that Defendants failed to maintain and provide them the required pay records, and instead paid them in cash. (ECF No. 79 at 16.) Because of Defendants' failure to provide the required records, Plaintiffs "cannot easily and readily ascertain the information required by Labor Code § 226(a)(1) through (9) without reference to other documents and information." *Id.* These allegations are sufficient to state a claim for the violation of § 226.

\\\

\\\

---

[3] Section 226(e) was amended effective January 1, 2013 to define "injury" in part to include situations where an employer "fails to provide a wage statement." 2012 Cal. Legis. Serv. Ch. 844 (A.B.1744) (West).

*e.* <u>Waiting Time Penalties</u>

The allegations pled in the operative complaint sufficiently state a claim of a failure to pay waiting time penalties. Section 201 of the California Labor Code requires employers who discharge employees to pay the employee the wages "due and payable immediately." Section 202 of the California Labor Code requires employers to pay employees not having a written contract for a definite period their wages not later than 72 hours after quitting, or if the employee has given 72 hours previous notice of his or her intention to quit, then at the time of quitting. Where an employer willfully fails to pay in accordance with § 201 or § 202, § 203 provides that the employee's wages continue as a penalty at the normal rate of pay from the due date to the date paid, not to exceed 30 days. Cal. Lab. Code § 203(a).

Plaintiffs allege that they were involuntarily discharged, were constructively terminated, or voluntarily terminated their employment, and did not receive all pay due and owing at the time their employment ended. (ECF No. 79 at 6.) Plaintiffs further allege that Defendants' violations of law were committed knowingly and willfully with full knowledge of the required laws. These allegations are sufficient to state a claim for violation of § 201 and § 202, and for entitlement to waiting time penalties pursuant to § 203.

Accordingly, the second and third *Eitel* factors favor entry of default judgment.

### 3. The Sum of Money at Stake

Turning to the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of [the defendant's] conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176-77. "This requires the court [to] assess whether the recovery sought is proportional to the harm caused by [the] defendant's conduct." *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010) (citing *Walters v. Statewide Concrete Barrier, Inc.*, No. C 04– 2559 JSW, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006)). "Default judgment is disfavored when a large sum of money is involved." *See Moore v. Cisneros*, No. 1:12–cv–00188– LJO–SKO, 2012 WL 6523017, at *4 (E.D. Cal. Dec. 12, 2013) (citation omitted); *see also BR North 223, LLC v. Glieberman*, No. 1:10–cv–02153 LJO–BAM, 2012 WL 639500, at *5 (E.D. Cal. Feb. 27, 2012) ("In general, the fact that a large sum of money is at stake is a factor

disfavoring default judgment." (citations omitted)). "The Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable." *HICA Educ. Loan Corp. v. Warne*, No. 11–CV–04287–LHK, 2012 WL 1156402, at *3 (N.D. Cal. Apr. 6, 2012) (citation omitted).

Here, Plaintiffs seeks an award of $51,640.94, which represents the statutory damages for unpaid wages, including interest thereon, and costs. Though the amount is not insignificant, it is reasonable in light of Defendants' extended failure to provide the wages and statements to which Plaintiffs were entitled. Thus, the fourth *Eitel* factor slightly favors entry of default judgment.

### 4. The Possibility of a Dispute Concerning the Material Facts

"The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the material facts surrounding the case." *United States v. Sterling Centrecorp, Inc.*, No. 2:08–cv–02556 MCE JFM, 2011 WL 2198346, at *6 (E.D. Cal. June 6, 2011) (quoting *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1060 (N.D. Cal. 2010)). Here, there is little possibility of dispute in this case. Defendant Dimas has not appeared in this action, and does not contradict the well-pled allegations. Furthermore, while Defendant FDI did file an answer denying the allegations in the complaint, it withdrew from defending and taking part in this legal proceeding and has declined to oppose the instant motion for default judgment. Thus, the fifth *Eitel* factor too weighs in favor of granting default judgment.

### 5. Whether Defendant's Default Was Due to Excusable Neglect

"The [sixth] *Eitel* factor considers whether a defendant's default may have resulted from excusable neglect." *Vogel*, 992 F. Supp. 2d at 1013 (citation omitted). *See generally United States v. Sanders*, Case No. 1:16–cv–00031–DAD–SAB, 2016 WL 5109939, at *4 (E.D. Cal. Sept. 20, 2016) ("Due process requires that all interested parties be given notice reasonably calculated to apprise them of the pendency of the action and be afforded opportunity to present their objections before a final judgment is rendered."). In the present action, there is no evidence that Defendants' failure to participate in the litigation is due to excusable neglect. Defendant Dimas was properly served with the summons and complaint, (ECF No. 101), but has not appeared in this action. Defendant FDI has appeared in this action, but has now willfully chosen not to further defend this

13

1     action. (ECF No. 118-1 at 5.) Thus, this factor weighs in favor of the entry of default judgment.

2                 *6. Policy Favoring Decisions on the Merits*

3         The seventh *Eitel* factor requires consideration of the strong policy favoring decisions on

4 the merits. *Eitel*, 782 F.2d at 1472 (citation omitted). Of course, the "general rule" is "that default

5 judgments are ordinarily disfavored" and "[c]ases should be decided upon their merits whenever

6 reasonably possible." *Id.*; *see also United States v. Signed Pers. Check No. 730 of Ybran S. Mesle*,

7 615 F.3d 1085, 1091 (9th Cir. 2010) ("[J]udgment by default is a drastic step appropriate only in

8 extreme circumstances; a case should, whenever possible, be decided on the merits."). This factor

9 inherently weighs strongly against awarding default judgment in every case. *See United States v.*

10 *Ordonez*, No. 1:10–cv–01921–LJO–SKO, 2011 WL 1807112, at *3 (E.D. Cal. May 11, 2011).

11 The instant action is no different. Nevertheless, this factor alone cannot preclude the entry of

12 default judgment. *See Levine v. Sleep Train*, 2:15-CV-0002 WBS AC, 2016 WL 2961100, at *6

13 (E.D. Cal. May 23, 2016), *report and recommendation adopted sub nom. Levine v. Train*, 2:15-

14 CV-0002 WBS AC, 2016 WL 3418350 (E.D. Cal. June 22, 2016).

15         In summary, six of the seven factors weigh in favor of default judgment. In the aggregate,

16 however, the factor favoring decisions on the merits is outweighed when compared with the other

17 factors, which weigh in favor of granting default judgment. Accordingly, the *Eitel* factors weigh

18 in favor of entering default judgment.

19       **C. Determination of the Terms of Judgment**

20         On a motion for a default judgment, the relief sought may not be different in kind from, or

21 exceed in amount, what is demanded in the complaint. Fed. R. Civ. P. 54(c). Furthermore, a

22 plaintiff is required to prove all damages sought in the complaint. *See Tele Video Sys., Inc.*, 826

23 F.2d at 917–18. "[A] default judgment must be supported by specific allegations as to the exact

24 amount of damages asked for in the complaint." *Philip Morris USA, Inc.*, 219 F.R.D. at 499. The

25 court looks to plaintiff's "declarations, calculations, and other documentation of damages in

26 determining if the amount at stake is reasonable." *United States v. Yermian*, Case No. SACV 15–

27 0820–DOC (RAOx), 2016 WL 1399519, at *3 (C.D. Cal. Mar. 18, 2016) (internal citations

28 omitted). If the amount claimed is a liquidated sum or capable of mathematical calculation, the

court may enter default judgment for money without a hearing. *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981); *see also U.S. v. Yermian*, SACV150820DOCRAOX, 2016 WL 1399519, at *3 (C.D. Cal. Mar. 18, 2016) ("Rule 55 does not require the court to conduct a hearing on damages, so long as it ensures there is an adequate basis for the damages awarded in the default judgment.") (citing *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991)). Nevertheless, if the facts necessary to determine the damages are not contained in the complaint, or are legally insufficient, they will not be established by default. *See Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir.1992).

### i. Damages

As aforementioned, Plaintiff seeks an award of damages on five causes of action: (1) failure to provide meal periods, (2) failure to provide rest periods, (3) failure to pay overtime wages, (4) failure to provide wage statements, and (5) failure to pay waiting time penalties.

### 1. Meal and Rest Periods

"The remedy for failure to provide a meal or rest break required by statute or regulation is premium wages: 'one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided.'" *Rodriguez*, 2018 WL 3446948, at *4 (quoting Cal. Labor Code § 226.7(c)); *see also* Cal. Code Regs. tit. 8, § 11070, subd. 11, 12.

Plaintiff Rosalba Maldonado seeks damages for the failure to provide meal periods and rest periods in the amount of $5,868.00, which represents one hour of pay for each workday that she was not provided a meal period and one hour of pay for each workday that she was not provided a rest period. In her declaration in support of the instant motion, Maldonado states that she worked for Dimas Manuel Inc., which conducted business as Ramos Furniture, at a rate of pay of $9.00 per hour from May 2011 to July 2012, frequently without having the opportunity to take a meal or rest break. (ECF No. 141-3 at 2). Maldonado offers a detailed spreadsheet based on pay records for 16 of the 65 weeks she worked for Defendants. (ECF No. 141-3 at 6-33).

Initially, in the operative complaint, Maldonado alleges that she worked for Defendants from May 2011 to April 2012. In her calculations, however, she includes an additional 62 days of

work between May 2012 and July 2012. Maldonado cannot recover for the additional 62 days as she did not allege in the operative complaint that she worked for Dimas Manuel, Inc during that period. *See* Fed. R. Civ. P. 54(c). According to her calculations, between May 2011 and April 2012, she worked 264 days without meal or rest periods in accordance with Wage Order No. 7 and Cal. Labor Code §§ 510 and 512. This amounts to $4,572.00 in premium pay.[4]

Plaintiff Marisol Topete seeks damages for the failure to provide meal periods and rest periods in the amount of $9,269.00, which represents one hour of pay for each workday that she was not provided a meal period and one hour of pay for each workday that she was not provided a rest period. Topete states that she worked for Defendant FDI from November 2013 to January 2015, and frequently worked without the opportunity to take rest or meal breaks. (ECF No. 141-4 at 2-3). Her hourly rate of pay was $10.00 from November 10, 2013 to December 29, 2013, $10.50 from December 20, 2013 to March 9, 2014, and $11.00 from March 10, 2014 to June 20, 2014. *Id.* Topete offers a detailed spreadsheet based on her pay records and timesheets, (ECF Nos. 141-4, 141-5), and they appear to accurately support her request for damages.

### 2. Overtime Wages

Maldonado and Topete also seek damages in the amount of $2,347.68 and $4,077.94, respectively, for the failure to pay overtime wages in accordance with Labor Code § 510 and Wage Order No. 7. (ECF No. 141-1 at 4). Wage Order No. 7 provides, in relevant part:

> Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than:
>
> (a) One and one-half (1 1/2) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek; and
>
> (b) Double the employee's regular rate of pay for all hours worked in excess of 12 hours in any workday and for all hours worked in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek.

Cal. Code Regs. tit. 8, § 11070, subd. 3(A).

---

[4] $5,868/2 = $2,394. $2,394/$9.00 = 326. 326 - 62 = 264. 264 x $9.00 = $2,376. $2,376 x 2 = $4,752.00.

16

Plaintiff Maldonado states that she was never paid overtime wages. (ECF No. 141-3 at 2). She frequently worked more than eight hours per day and more than forty hours per week, beginning work between 9:00 a.m. and 10:00 a.m. and leaving between 8:00 p.m. and 9:00 p.m. *Id.* Plaintiff Topete states that she was not paid overtime wages for her work between November 10, 2013 and April 20, 2014. Both Maldonado and Topete offer calculations of their unpaid overtime wages. (ECF Nos. 141-2 at 7-32). Topete's calculations appear to accurately support her request for damages. However, Maldonado's calculations again encompass a period that she did not plead in her complaint. Therefore, her damages must be reduced by $460.04, which represents purported overtime wages for 57 days between May 2012 and July 2012, to $1,887.64. *See* Fed. R. Civ. P. 54(c).

### 3. Wage Statements

Maldonado and Topete request damages in the amount of $4,000 and $2,250, respectively, for the failure to provide wage statements in violation of Labor Code § 226. (ECF No. 141-1 at 7). An employee suffering injury due to an employer's failure to provide wage statements is entitled to recover the greater of all actual damages, or $50 for an initial violation and $100 per employee for each violation in a subsequent pay period, not to exceed $4,000 total. Cal. Lab. Code § 226(e)(1). Maldonado states that she never received a standard paycheck stub at any time during her employment, and was instead paid in cash. (ECF No. 141-3 at 2). This would constitute violations for 52 pay periods. Topete states that she was not issued a standard paycheck stub between November 10, 2013 and April 20, 2014, or approximately 23 pay periods. (ECF No. 141-4 at 3). Therefore, a damages award of $4,000 to Maldonado and $2,250 to Topete is supported by the allegations in the complaint.

### 4. Waiting Time Penalties

Where an employer willfully fails to pay all wages due and owing to an employee at the termination of the employment relationship, the employee's wages continue as a penalty at the normal rate of pay from the due date to the date paid, not to exceed 30 days. Cal. Lab. Code § 203(a). Maldonado and Topete seek $2,761.64 and $2,079.30, respectively, as waiting time penalty. The detailed spreadsheets offered by Maldonado and Topete appear to accurately support

17

the request for waiting time penalties. Maldonado earned an average daily pay of $92.06, or $2,761.80 over 30 days, while Topete earned an average daily pay of $69.31, or $2,079.30 over 30 days.

### ii. Interest and Litigation Costs

California Labor Code §§ 1194 and 218.5 provide for the award of reasonable attorney's fees, litigation costs, and interest to the prevailing party in an action to recover overtime wages. Labor Code § 218.6 and Civil Code § 3289 set interest at a rate of 10 percent per annum. Topete and Maldonado jointly seek $8,511.37 in litigation costs. The requested recovery for litigation cost is supported by a detailed summary and calculation, and appears to be appropriate. (ECF No. 141-2 at 34-35.) Topete and Maldonado also seek interest on the overtime wages and premium wages due and owing in the amount of $5,214.67 and $5,255.34, respectively. Plaintiffs submit a detailed calculation of the interest due that appears to be accurate. However, as aforementioned, the interest on damages for Maldonado must be reduced by $930.94 to reflect only the period pled in the complaint. Therefore, Maldonado's interest on damages totals $4,324.40.

### iii. Attorney's Fees

As aforementioned, a plaintiff who has successfully alleged a failure to provide accurate wage statements, failure to pay overtime wages, or nonpayment of wages are entitled to attorney's fees under California law. Cal. Lab. Code §§ 226(e)(1), 218.5, 1194. Plaintiffs seek $76,942.00 in attorney's fees, which is the product of 105.4 hours of work performed by Daniel M. Kopfman of Wagner Jones Kopfman & Artenian LLP at an hourly rate of $730.00. (ECF No. 141-2 at 4.)

#### 1. Lodestar Calculation

"'[F]ee shifting' refers to an award under which a party that did not prevail in the litigation is ordered to pay fees incurred by the prevailing party." *Laffitte v. Robert Half Internat. Inc.*, 376 P.3d 672, 676 (2016). Under a fee-shifting statute, courts typically use the "lodestar" approach for assessing reasonable attorney's fees. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *Ketchum v. Moses*, 24 Cal.4th 1122, 1131 (2001). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the

litigation by a reasonable hourly rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quoting *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001)). The attorney's fee applicant bears the initial burden of establishing the appropriate number of hours expended. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). "Absent circumstances rendering the award unjust, an attorney fee award should ordinarily include compensation for all the hours reasonably spent, including those relating solely to the fee." *Ketchum*, 17 P.3d 743. "[T]rial courts must carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation." *Id.* at 741 (*citing Serrano v. Priest*, 569 P.2d 1303 (1977)). "A district court should exclude from the lodestar amount hours that are not reasonably expended because they are excessive, redundant, or otherwise unnecessary." *Van Gerwin v. Guarantee Mut. Life Co.*, 214 F.3d 1041,1045 (9th Cir. 2000).

A reasonable hourly rate is to be calculated considering "the prevailing market rates in the relevant community," *Blum v. Stenson*, 465 U.S. 886, 895 and n.11 (1984), as well as the lawyer's "experience, skill, and reputation," *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995). The "relevant community" for purposes of determining the prevailing market rate is the "forum in which the district court sits." *Camacho*, 523 F.3d at 979. In this action, "[t]he Eastern District of California, Fresno Division, is the appropriate forum to establish the lodestar hourly rate." *Jadwin v. County of Kern*, 767 F. Supp.2d 1069, 1129 (E.D. Cal. 2011).

In evaluating hourly rates, the Court may consider "[a]ffidavits of the plaintiffs' attorneys and other attorneys regarding fees in the community" and hourly rates paid in other cases. *See United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). The Court may apply "either current or historically prevailing rates," though "the use of current rates may be necessary to adjust for inflation if the fee amount would otherwise be unreasonable." *Schwarz*, 73 F.3d at 908.

Here, Plaintiffs submit the declaration of Daniel M. Kopfman. Mr. Kopfman offers a detailed record of the number of hours he worked and the tasks he performed on this case. (ECF No. 141-2 at 37). This sufficiently establishes the appropriate number of hours expended in this

litigation. *See Concepcion v. Amscan Holdings, Inc.*, 223 Cal.App.4th 1309, 1324 (2014) ("Declarations of counsel setting forth the reasonable hourly rate, the number of hours worked and the tasks performed are sufficient.").

Mr. Kopfman also describes his level of skill and experience. Mr. Kopfman states that he graduated from San Joaquin College of Law in May 1997, and was admitted to the State Bar of California in December 1997. He began working on employment and personal injury cases at Wagner & Jones LLP in March 1996, and continued to do so after his admission to the State Bar. *Id.* Mr. Kopfman has been the primary litigating attorney on all Wagner & Jones's class action lawsuits since 2001. *Id.* In 2013, Mr. Kopfman became a partner with Wagner Jones Kopfman & Artenian LLP, and has since represented employees in federal district courts and various Superior Courts throughout California. *Id.* The law firm has been the attorney of record in approximately 26 wage and hour class actions. *Id.* Mr. Kopfman notes that the United States District Court for the Northern District of California recently awarded him $730.00 per hour for his work on two class action cases: *Acosta v. Frito-Lay, Inc.*, No. 15-CV-02128-JSC, 2018 WL 2088278, at *12 (N.D. Cal. May 4, 2018) and *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 980 (N.D. Cal. 2017).

Plaintiffs, however, have not offered any evidence demonstrating that $730.00 is a reasonable hourly rate for attorneys of similar capabilities and experience within the Fresno legal community. Although Mr. Kopfman has been awarded an hourly rate of $730.00 in the Northern District of California, the Court must look to the prevailing market rate in the relevant community: Fresno Division of the Eastern District of California. Therefore, the Court will look to recent decisions to determine whether the rate requested by Plaintiffs is reasonable.

The court notes that Mr. Kopfman has previously been awarded an hourly rate of $325.00 by this court. *See Williams v. Ruan Transport Corp.*, 1:13-CV-01157-LJO, 2013 WL 6623254, at *6 (E.D. Cal. Dec. 16, 2013). However, this decision was rendered almost five years ago, when Mr. Kopfman had fifteen years of experience. Mr. Kopfman now has over twenty years of experience. During the intervening time, hourly rates have presumably increased both within the Fresno market generally and for Mr. Kopfman.

The court has recently addressed prevailing rates in the local economy in a similar employment action, and found that in the Fresno Division of the Eastern District of California, attorneys with experience of twenty or more years are awarded an hourly rate of $350.00 to $400.00. *See In re Taco Bell Wage & Hour Actions*, 222 F. Supp. 3d 813, 839 (E.D. Cal. 2016); *see also Torchia v. W.W. Grainger, Inc.*, 304 F.R.D. 256, 277 (E.D. Cal. 2014) (awarding attorney with twenty-five years of experience $380.00 per hour in wage and hour class action); *Sanchez v. Frito–Lay, Inc.*, No. 1:14–CV–00797 AWI, 2015 WL 4662636, at *18 (E.D. Cal. Aug. 5, 2015), *report and recommendation adopted*, No. 1:14–CV–797–AWI–MJS, 2015 WL 5138101 (E.D. Cal. Aug. 26, 2015) (finding reasonable rate for attorney with twenty years of experience was $350.00 per hour in a wage and hour class action); *Torres v. Pet Extreme*, No. 1:13–CV–01778–LJO, 2015 WL 224752, at *11 (E.D. Cal. Jan. 15, 2015), *amended*, No. 1:13–CV–01778–LJO, 2015 WL 648241 (E.D. Cal. Feb. 5, 2015) (finding $400.00 per hour reasonable hourly rate for experienced counsel in class action); *Willis v. City of Fresno*, No. 1:09–CV–01766–BAM, 2014 WL 3563310, at *12 (E.D. Cal. July 17, 2014) *adhered to on reconsideration*, No. 1:09–CV–01766–BAM, 2014 WL 4211087 (E.D. Cal. Aug. 26, 2014) (awarding attorneys with over twenty five years of experience $380.00 per hour); *Verduzco v. Ford Motor Co.*, No. 1:13–CV–01437–LJO, 2015 WL 4131384, at *4 (E.D. Cal. July 9, 2015) *report and recommendation adopted*, No. 1:13–CV–01437–LJO, 2015 WL 4557419 (E.D. Cal. July 28, 2015) (awarding attorney with over 40 years of experience $380.00 per hour). Considering Mr. Kopfman's extensive experience litigating wage and hour class actions, the Court finds that an hourly rate on the higher end of the spectrum is appropriate. Therefore, an hourly rate of $400.00 is a reasonable rate. Accordingly, the lodestar amount for the services provided by Mr. Kopfman is $42,160.00.

### 2. Multiplier

"[A] court may adjust the lodestar upward or downward using a 'multiplier' based on factors not subsumed in the initial calculation of the lodestar." *Van Gerwen*, 214 F.3d at 1045. "The lodestar amount is presumptively the reasonable fee amount, and thus a multiplier may be used to adjust the lodestar amount upward or downward only in 'rare and exceptional cases,

supported by both specific evidence on the record and detailed findings by the lower courts'" that the lodestar amount is unreasonably low or unreasonably high. *Id.* (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)) (citations and internal quotations omitted). Under California law, the lodestar may be adjusted based on factors including "(1) the results obtained by plaintiff's counsel; (2) the skill and quality of representation; (3) the novelty and difficulty of the questions involved; (4) the extent to which the litigation precluded other employment by the attorneys; and (5) the contingent nature of the case." *Jadwin v. County of Kern*, 767 F.Supp.2d 1069, 1134–35 (E.D.Cal.2011) (citing *Serrano v. Priest*, 569 P.2d 1303 (1977), and *Lealao v. Beneficial Cal., Inc.*, 82 Cal.App.4th 19, 45(2000)). "[T]he trial court is not required to include a fee enhancement to the basic lodestar figure for contingent risk, exceptional skill, or other factors, although it retains discretion to do so in the appropriate case; moreover, the party seeking a fee enhancement bears the burden of proof." *Ketchum*, 24 Cal.4th at 1138 (emphasis in original); *accord Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010).

The present case involved an unexpected amount of time and labor. Plaintiff's counsel accepted representation of this class action alleging violations of state and federal labor law more than three years ago. Despite the potential that the class would not be certified and the contingent nature of success, counsel diligently and skillfully prosecuted this action. Even though the action did not present novel or difficult questions of law, it nevertheless presented a difficult circumstance: a corporate defendant that willfully refused to participate in the litigation process. Counsel attended several conferences to resolve discovery disputes, (ECF Nos. 87, 92, 120), and filed several motions to compel discovery, (ECF Nos. 102, 123). Furthermore, opposing counsel withdrew from the action, (ECF No. 126), and the corporate representative made clear that he did not intend to defend this action, did not intend to obtain new counsel, and did not believe the corporation had finances to continue its business operations, (ECF Nos. 118-1 at 5). These litigation risks, combined with the low likelihood for actual recovery, made this class action undesirable and unsustainable. Plaintiffs were forced to abandon their class claims. Nevertheless, under the circumstances, counsel continued to professionally litigate the case to obtain the best

results he could for his named plaintiffs. Therefore, because the lodestar is unreasonably low in light of the time spent on and the issues that arose in this action, the Court will adjust the lodestar upward using a 1.33 multiplier.

Accordingly, this Court recommends that Plaintiff's request for attorneys' fees be granted in the amount of $56,072.80.

## III.    CONCLUSIONS AND RECOMMENDATIONS

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1.  Plaintiffs' motion to dismiss all class claims be GRANTED;

2.  Plaintiffs' motion for default judgment against Furniture Deals, Inc. dba Ramos Furniture and Dimas Manual, Inc. on the individual claims be GRANTED;

3.  Judgment be entered as follows:

    a.  Plaintiff Rosalba Maldonado be awarded damages and interest thereon in the amount of $17,546.04;

    b.  Plaintiff Marisol Topete be awarded damages and interest thereon in the amount of $22,890.91;

    c.  Plaintiffs be awarded costs in the amount of $8,511.37; and

    d.   Plaintiffs be awarded attorney's fees in the amount of $56,072.80; and

4.  The Clerk of the Court be directed to CLOSE this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these findings and recommendations, the parties may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

\\\
\\\
\\\
\\\
\\\

Failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **August 20, 2018**                        /s/ Erica P. Grosjean
                                                              UNITED STATES MAGISTRATE JUDGE